**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
| **EXPRESS CAR** | : | **INVOLUNTARY** |
| **& TRUCK RENTAL, INC.,** | : | |
| | : | **Bky. No. 09-15041 ELF** |
| **Debtor** | : | |
| | : | |
| | : | |
| IN RE: | : | Chapter 7 |
| **REPETE ASSOCIATES,** | : | **INVOLUNTARY** |
| | : | |
| **Debtor** | : | **Bky. No. 09-15042 ELF** |
| | : | |

# A M E N D E D   M E M O R A N D U M

## I.  INTRODUCTION

Each of the above captioned bankruptcy cases was commenced on the same day by an involuntary bankruptcy petition under chapter 7 of the Bankruptcy Code filed by a single petitioning creditor, Margaret M. Stuski ("Stuski").  Subsequently, upon motion of the former debtors, the court dismissed both involuntary petitions.  Pursuant to 11 U.S.C. §303(i), the former debtors, Express Car & Truck Rental, Inc. and Repete Associates (collectively, "the Former Debtors") now seek an award of attorney's fees in the amount of $34,524.00.

As explained more fully below, although some reduction in the fee award is appropriate, I find that the Former Debtors' are entitled to an award of attorney's fees under §303(i).  I will enter a judgment in favor of  the Former Debtors and against Stuski in the amount of $26,495.00.

## II.  PROCEDURAL HISTORY

On July 9, 2009, Stuski filed separate chapter 7 involuntary bankruptcy petitions (the "Involuntary Petitions") against the Former Debtors.  On July 14, 2009, each Former Debtor filed a Motion to Dismiss the Involuntary Chapter 7 Proceeding (the "Motions to Dismiss") in its case, requesting an expedited hearing and specifically reserving the right to pursue sanctions against Stuski under 11 U.S.C. §303(i).  (Bky. No. 09-15041, Doc. #'s 8, 9; Bky. No. 09-15042, Doc. #'s 7, 8).

Following a hearing on the Motions to Dismiss, the court dismissed the Involuntary Petitions on July 20, 2009.  Pursuant to §303(i)(1), the Former Debtors have requested attorney's fees.  Stuski opposes the award of any attorney's fees.  In a nutshell, she asserts that she filed the Involuntary Petitions in good faith and that, in any event, she was willing to dismiss the petitions voluntarily almost immediately after they were filed, making the request for attorney's fees unnecessary and unreasonable.

On June 21, 2010, the court held an evidentiary hearing.  Two witnesses testified: Stuski and Deborah McGuckin, the office manager of the firm that is representing the Debtors.  At the conclusion of the hearing, the court took the matter under advisement.

## III.  <u>FINDINGS OF FACT</u>

1.  Express Car & Truck Rental, Inc. is an automobile and truck rental and leasing company located in Warminster, Pennsylvania.  (Notes of Testimony ("N.T.") at 100).

2.  Repete Associates is a real estate holding company for the businesses. (N.T. at 70).

3.  The Former Debtors are owned and operated by Peter Brandow and Stephen Spielman.

4.   Peter Brandow has an ownership interest in other business entities.  (N.T. at 44).  The parties

refer to Mr. Brandow's various businesses collectively as "the Brandow Group."

5.   Stuski is a Pennsylvania licensed lawyer, (N.T. at 33), and former officer and employee of

Brandow Chrysler Jeep Company ("Brandow Chrysler"), one of the Brandow Group

entities.  (N.T. at 61, 138, 151-52).

6.   Stuski became involved in the day to day operations of the Brandow Chrysler in November

of 2004, after the businesses experienced significant losses from fraud and mismanagement.

(N.T. at 22, 104, 137).

7.   Stuski performed various duties for Brandow Chrysler, including accounting and legal work.

(N.T. at 40).

8.   Stuski believes that she received a one-third equity ownership in one or more of the

Brandow Group entities in exchange for the legal and management services she rendered.

However, with the exception of certain stock that she received in an entity called Team

Dodge, she was not formally issued stock in any of the companies. (N.T. at 22-23, 33, 42,

208-09).

9.   Stuski contends that she and the Former Debtors' principals entered into a separation

agreement in November of 2008 whereby Stuski would be paid $500,000.00 in

consideration of her contributions to the businesses ("the Alleged Settlement Agreement").

(N.T. at 113-115, 163).

10.  Stuski claims that her right to payment under the Alleged Settlement Agreement was

conditioned upon the occurrence of any one of three events:

    a.   the sale of certain real estate owned by the Brandow Group;

    b.   the resolution of litigation instituted in state court in Montgomery County, Pennsylvania by certain Brandow entities against their former accountants, Goldenberg Rosenthal, LLP (the "State Court Litigation"); or

    c.   the existence of sufficient funds on hand for payment to Stuski by the Brandow Group.

(N.T. at 35, 164, 201-02).

11. The parties did not reduce the Alleged Settlement Agreement to writing.  (N.T. at 21, 39).

12. In March 2009, Stuski believed that one or more of the payment conditions under the Alleged Settlement Agreement had occurred.  (N.T. at 35-37, 123-125, 164).

13. On March 9, 2009, Stuski filed an involuntary bankruptcy petition against one of the Brandow Group entities, Brandow Chrysler Jeep, in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania ("the Brandow Chrysler Petition").  (Bky. No. 09-11715, Doc. #1).

14. Stuski was the sole petitioning creditor on the Brandow Chrysler Petition, listing $500,000.00 in "legal fees" as the amount and nature of her claim against Brandow Chrysler.  (Id.; N.T. at 25, 26).

15. The Brandow Chrysler Petition was dismissed for lack of proper service on May 14, 2009.  (Bky. No. 09-11715, Doc. #'s 7, 9).

16. In June 2009, after the dismissal of the  Brandow Chrysler Petition, Stuski came to believe that another payment condition under the Alleged Settlement Agreement occurred.[1]

---

[1]    Stuski obtained and read the Warminster Township Board of Supervisors meeting minutes from June 25, 2009 which refers to a subdivision and land development project at 455 West Broad Street, Warminster, Pennsylvania, a property ("the Property") owned by a Brandow Group entity.

(continued...)

17. Also at some point in time prior to June 29, 2009, Stuski spoke to two employees of the Brandow Group who told her that they were not receiving supplies at work and that creditors were not being paid in the ordinary course of business, (N.T at 76-77).  At or around the same time, Stuski allegedly received an e-mail from a banking institution, which indicated that the account of one of the Brandow Group entities was overdrawn.  (N.T at 77-78).

18. On June 29, 2009, Stuski signed the Involuntary Petitions against the Former Debtors,[2] and placed them in the U.S. mail for delivery to the office of the Clerk of the U.S Bankruptcy Court for the Eastern District of Pennsylvania.[3]

19. At or around the time that she signed the Involuntary Petitions and mailed them to the court, Stuski sent an e-mail to "the Brandows" advising them of her intent to file the Involuntary Petitions.  (N.T. at 216-217).

20. Prior to mailing the Involuntary Petitions to the court, Stuski was aware that the Brandow Group and its principals disputed her contention that, pursuant to the Alleged Settlement

---

[1](...continued)
(N.T. at 121, 195-497, Exhibit P-38).  Stuski inferred from the minutes that the Brandow Group had sold the Property and received a substantial, non-refundable down payment.  (N.T at 123-125, 164).

[2]      Both of the Involuntary Petitions signed by Stuski are dated June 29, 2009.  (Bky No. 09-15041, Doc. # 1; Bky. No. 09-15042, Doc. # 1)  In her testimony, Stuski stated that she mailed the Involuntary Petitions on June 29, 2009.  (N.T. at 214)

[3]      In her testimony, Stuski stated that she advised "the Brandows" of her intentions to file involuntary petitions in approximately mid-June 2009.  (N.T. at 216-17).  However, throughout her testimony, she was unable to present a precise time-line of her actions.  I consider it more likely that she sent the e-mail either on the same day or within a day or two after she signed the Involuntary Petitions and mailing them to the Clerk.

Agreement, she was entitled to the payment of $500,000.[4]

21. Stuski was the sole petitioning creditor on the Involuntary Petitions.  (Bky No. 09-15041,

    Doc. # 1; Bky. No. 09-15042, Doc. # 1).

22. Stuski's motivation for filing the Involuntary Petitions was to enforce the Alleged

    Settlement Agreement.[5]

23. Michael Menkowitz  ("Menkowitz") is an attorney at the Philadelphia law firm, Fox

    Rothschild, LLP.

---

[4]        This finding is not consistent with Stuski's testimony because I do not credit her
testimony on this point.  Stuski testified that she first learned that her claim was disputed when she
communicated with the Brandow Group's counsel regarding the Involuntary Petitions in either late June
or early July 2009, but apparently after in the period between the mailing of the Involuntary Petitions to
the court and their receipt by the court.  (N.T. at 54, 58, 105, 220).  Stuski's communications with the
Brandow Group's counsel are the subject of Findings of Fact Nos. 23-28, infra.  However, given her
acrimonious relationship with the principals of the Brandow Group, the amount of time that passed since
she had entered into the Alleged Settlement Agreement and the absence of any documentation of the
Alleged Settlement Agreement, I consider it more likely than not that Stuski was well aware that the
Brandow Group entities disputed the existence of the Alleged Settlement Agreement when she prepared
and filed the Involuntary Petitions before her communications with the Brandow Group's attorney.


[5]        Stuski suggests that prior to filing the Involuntary Petitions, she inferred from  the
statements made to her by third parties regarding financial the financial difficulties of the Brandow
entities (summarized in Finding of Fact No. 17, supra) that Brandow employees might be working
without pay.  At trial, Stuski asserts that her filing of the Involuntary Petitions was motivated, in part, by
this concern.  (N.T. at 59, 120).  I am unpersuaded.  While Stuski may have understood that, as a general
proposition, an involuntary bankruptcy filing can benefit an involuntary debtor's employees, there is
nothing in the record to suggest that, in fact, any Brandow Group employees were working without pay.
And, her reasoning on this point is not entirely consistent with her position that the Brandow Group had
sufficient cash to pay at least some portion of the $500,000.00 that she claims is owing under the Alleged
Settlement Agreement.

        I do not believe that a concern for the welfare of the Brandow Group employees was a
material factor in Stuski's decision to file the Involuntary Petitions.  Rather, based upon all of the
surrounding circumstances, as well as my assessment of her as a trial witness, I find that her primary
motivation in filing the Involuntary Petitions was to protect her own interests and to remedy what she
considered to be a grave injustice inflicted upon her by the Brandow Group principals.

24. On or about July 2, 2009, Menkowitz held himself out as counsel for the Former Debtors in a telephone conversation with Stuski in which they discussed the Involuntary Petitions. (N.T. at 215-16).[6]

25. In that conversation, Menkowitz informed Stuski that the Alleged Settlement Agreement was disputed by the Brandow Group (N.T. at 220), that she needed three petitioning creditors in order to file the Involuntary Petitions (N.T. at 219-220) and that her claims against the Brandow entities should be brought in state court, not the bankruptcy court. (N.T. at 55).[7]

26. Later that day, after considering the content of Menkowitz's communication, Stuski decided to dismiss the Involuntary Petitions and instead, pursue her claims in state court. (N.T. at 222-223).[8]

27. After making that decision, Stuski communicated further with Menkowitz on July 2nd and

---

[6]    The Former Debtors offered no evidence to suggest either that Menkowitz did not hold himself out as their authorized representative or that, if he did so, he lacked authority.  Also, the Former Debtors' bankruptcy counsel, Alan L. Frank's time records regarding this matter begin on June 30, 2009, but contains no time entries between July 2, 2009 and July 13, 2009.  That hiatus is consistent with the evidence suggesting that, for some period of time beginning on or around July 2, 2009, Menkowitz was representing the Former Debtors in this matter.

[7]    I have found that Stuski was already aware of that her claim was disputed.  See Finding of Fact No. 20 & n.3, supra.  She learned in her conversation with Menkowitz that the existence of the dispute effectively disabled her from acting as a petitioning creditor under 11 U.S.C. §303.  See n.8, infra.

[8]    Stuski testified that Menkowitz explained to her that if an entity has more than twelve creditors, 11 U.S.C. §303(b) requires three petitioning creditors for the filing of an involuntary bankruptcy petition.  Stuski stated that prior to her conversation with Menkowitz she misinterpreted 11 U.S.C. §303(b) to require three petitioning creditors only if the debtor has more than twelve secured creditors and that she believed that neither of the Former Debtors had more than twelve secured creditors.  (N.T. at 69, 71-72, 141-42).

3rd, 2009 by both e-mail and telephone.  (N.T at 225-33)  In those subsequent

communications, Stuski:

> a.   attempted to advise Menkowitz of her willingness to withdraw the Involuntary
>      Petitions (N.T at 230, 232); and
>
> b.   invited Menkowitz to discuss a global settlement of her claims (N.T. at 226-
>      227).

28.  In her communications with Menkowitz on July 2 and 3, 2009, Stuski did not express her

intention to withdraw the Involuntary Petitions clearly and unequivocally.[9]

29.  After July 3, 2009, Stuski expected to hear back from Menkowitz regarding the proper

procedure for dismissal of the Involuntary Petitions.  (N.T at 55, 193-94, 232).[10]

---

[9]      At trial, Stuski admitted that at no time on July 2nd or 3rd did she advise Menkowitz unequivocally that she would withdraw the Involuntary Petitions.  (N.T. at 229)  However, because she did tell Menkowitz that she would pursue her claims in state court – as he had suggested was the proper course of action during their initial telephone conversation on July 2nd – Stuski believes that, in context, her statement communicated to Menkowitz her intent to withdraw the Involuntary Petitions and that Menkowitz must have understood its meaning.  (N.T. at 230, 232).

The Former Debtors did not call Menkowitz as a witness to dispute Stuski's version of the events.  On this record, I find Stuski's description of the content of her statements to Menkowitz credible.

However, I do not as easily accept Stuski's inference that Menkowitz understood her intentions.  Some uncertainty exists due to the indirect manner in which she expressed herself (i.e., referring only to pursuing the matter in state court rather than specifically stating that she was withdrawing the Involuntary Petitions).  It is also possible that by asking Menkowitz to begin negotiating a global settlement of the dispute in the course of discussing dismissal of the bankruptcy cases, she created the impression that her willingness to withdraw the Involuntary Petitions was conditioned on a global settlement, or at least, was subject to further negotiations.  She could have avoided creating such an impression by the simple expedient of filing her own motion to dismiss the Involuntary Petitions.  See 11 U.S.C. §303(j).

[10]     Stuski was less than clear in providing a clear time line, but it appears from her testimony that a few days after her initial flurry of communications with Menkowitz on July 2 and 3, 2009, she had another telephone conversation with Menkowitz, after which she thought he would assist her in discontinuing the bankruptcy proceedings.  She testified as follows:

(continued...)

30. On July 9, 2009, the Involuntary Petitions were docketed by the Clerk of the bankruptcy

   court.  (Bky. No. 09-15041, Doc. #1; Bky. No. 09-15042, Doc. #1).[11]

31. On July 14, 2009, the Former Debtors filed the Motions to Dismiss the Involuntary Petitions

   in both bankruptcy cases.  (Bky. No. 09-15041, Doc # 9; Bky. No. 09-15042, Doc. # 8).

32. By orders dated July 20, 2009, the court dismissed each of the Involuntary Petitions and

   retained jurisdiction over the Former Debtors' claim for attorney's fees under 11 U.S.C.

   §303(i).  (Bky. No. 09-15041, Doc. # 16; Bky. No. 09-15042, Doc. # 14).

33. Menkowitz did not appear on behalf of the Former Debtors in the bankruptcy cases.  Alan L.

   Frank ("Frank") and his law firm, Alan L. Frank and Associates, P.C., filed the Motions to

   Dismiss the Involuntary Petitions and otherwise acted as the Former Debtors' counsel in

   these bankruptcy cases.[12]

34. Frank submitted attorney time records which indicate that he and his associates, expended

---

[10](...continued)

> And we had a subsequent conversation where I said, well, then, what I'm going to do is file in Montgomery County, 'cause it wasn't the choice of the venue, it was just to get issues resolved between us.  And he said, well, that's fine, do what you want to do in Montgomery County but the petitions have to come out the Bankruptcy Court.
>
> And I said, great, when are you gonna get back to me, because I wasn't sure if we had to do a joint filing to renew them or what the sections were, he was the expert. He said, I'll get back to you at the end of next week.  Instead of ever getting back to me, that's when the motions were filed by Mr, Frank without any conversation for me whatsoever and that's when the proceedings started here.

(N.T. at 193-94).

[11]    Nothing in the record explains the seemingly inordinate delay between the mailing of the Involuntary Petitions and their docketing by the Clerk.

[12]    For convenience, I will refer to Frank and his law firm interchangeably as "Frank."

108.2 hours in these bankruptcy cases through the trial of this matter, resulting in a request

for attorney's fees in the total amount of $34,524.00 .  (Exhibit PD – 22A)

# IV.  <u>DISCUSSION</u>

## A. 11 U.S.C. §303(i)

Section 303(i) authorizes a court to awards fees, costs, and/or damages against a

petitioning creditor upon the dismissal of an involuntary petition.  It provides:

> (i)  If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
>> (1) against the petitioners and in favor of the debtor for—
>>
>>> (A) costs; or
>>> (B) a reasonable attorney's fee; or
>>
>> (2) against any petitioner that filed the petition in bad faith, for—
>>
>>> (A) any damages proximately caused by such filing; or
>>> (B) punitive damages.

11 U.S.C. §303(i).

At trial, the Former Debtors acknowledged that they were not seeking costs under

§303(i)(1)(A) or damages under §303(i)(2).  Thus, the sole issue is whether the Former Debtors

are entitled to an award of attorney's fees and, if so, in what amount.  The Former Debtors

request an award of $34,524.00 in attorney's fees.

## B.  The "Consent" Issue Under §303(i)

To obtain judgment against a petitioning creditor under §303(i), a debtor must satisfy three requirements: (1) the court must have dismissed the involuntary petition; (2) the dismissal must be **other than** on consent of all petitioners and the debtor; and (3) the debtor must not have waived the right to a §303(i) claim.  In re R. Eric Peterson Construction, 951 F.2d 1175, 1179 (10th Cir. 1991); In re Diloreto, 388 B.R. 637, 646-647 (Bankr. E.D. Pa 2008); In re Kelton Motors, Inc., 121 B.R. 166, 185 (Bankr. D. Vt. 1990).

Before judgment may be entered in favor of the debtor under §303(i), the threshold question is whether the involuntary petition was dismissed other than upon consent of all the petitioners and the debtor.  If a court determines that an involuntary petition was dismissed upon the consent of both parties, the debtor is not entitled to judgment under §303(i).  R. Eric Peterson Construction, 951 F.2d at 1181; In re Analytica Wire, Inc., 392 B.R. 618, 621-22 (Bankr. D. Del. 2008); In re International Mobile Advertising, 1991 WL 156588, at *1 (E.D. Pa. 1991).

The Involuntary Petitions were dismissed in both bankruptcy cases by this court's orders dated July 20, 2009, granting the Former Debtors' respective Motions to Dismiss the Involuntary Cases.  At the outset of the July 20, 2009 hearing on the Motions, Stuski informed the court that she did not oppose the dismissal of the Involuntary Petitions.  The Former Debtors then stated that they welcomed the dismissal of the bankruptcy cases, but reserved their rights to seek a judgment under §303(i).  In response, Stuski stated that while she consented to dismissal of the involuntary cases, she did not agree that any judgment in favor of the Former Debtors under §303(i) could be entered.

At the July 20, 2009 hearing Stuski argued, and she continues to maintain, that because she did not oppose dismissal of the involuntary cases, the Involuntary Petitions were being

-11-

dismissed <u>with</u> the consent of both parties and therefore, there is no statutory authority for the

entry of an award of attorney's fees in this case.  Her position is not without support.

Courts are divided on the meaning of the phase "other than on consent" under §303(i).

Based on its text, §303(i) can be read to preclude recovery of attorney's fees if a debtor or

petitioning creditor merely acquiesces to or does not oppose a motion to dismiss, notwithstanding

the debtor's unequivocal reservation of its right to seek attorney's fees and costs.  <u>See, e.g.,</u>

<u>Analytica Wire</u>, 392 B.R. at 622 (finding consent where both creditor and debtor moved for

dismissal and were clearly in agreement at hearing as to dismissal of involuntary petition);

<u>International Mobile Advertising Corp.</u>, 1991 WL 156588, at *1 (finding consent where debtor

and creditor filed joint motion to dismiss involuntary petition and petition was "uncontested").

At the July 20, 2009 hearing, I rejected Stuski's argument and, in the orders dismissing

the Involuntary Petitions, permitted the Former Debtors' §303(i) claim to proceed.  (Bky. No. 09-

15041, Doc. # 16; Bky. No. 09-15042, Doc. # 14).  I did so because I find the text of §303(i)

ambiguous on this point and the result Stuski urges at odds with the purpose of §303(i).  <u>See</u> <u>In re</u>

<u>S. Cal. Sunbelt Developers, Inc.</u>, 608 F.3d 456, 462 (9th Cir. 2010) (Section 303(i) is a "fee

shifting" provision based on the outcome of the litigation).

Other courts have reached the same conclusion, finding Stuski's suggested construction

of the statue illogical because it would require a debtor "to oppose the petitioner's motion to

dismiss, even though doing so prolongs the period that the involuntary bankruptcy remains

pending, accentuates the prejudice caused by the involuntary petition, and prevents actual

recovery until after the dismissal, which the debtor really favors but is artificially being forced to

oppose."  <u>R. Eric Peterson Construction</u>, 951 F.2d at 1180.  Thus, "[a] debtor should not be

required actively to oppose dismissal of an involuntary bankruptcy in order to preserve a claim for damages under section 303(i) if that petition was wrongfully brought." Id.

I find the reasoning in R. Eric Peterson Construction to be sound.  Indeed, to hold otherwise, all a petitioning creditor must do to defeat a claim under §303(i) is to acquiesce to a debtor's motion to dismiss an involuntary petition.  The better reading of the statute is that once a debtor reserves the right to seek damages under §303(i), that reservation qualifies the debtor's consent and therefore, the dismissal of the case is not "on consent of all petitioners and the debtor."  11 U.S.C. §303(i) (emphasis added); see R. Eric Peterson Construction, 951 F.2d at 1180 (holding that "a more passive statement of nonopposition to the creditors' motion to dismiss the petition should not indicate consent, at least where . . . the debtor simultaneously manifests its intention to seek damages under section 303(i)"); In re Tichy Elec. Co., 332 B.R. 364, 375 (Bankr. N.D. Iowa 2005) (concluding that debtor did not consent to dismissal within the meaning of §303(i) where debtor did not waive its right to claim under that section); In re Jett, 206 B.R. 407, 409 (Bankr. E.D. Va. 1997) (holding that "petitioning creditor's nonopposition to dismissal is not consent under the statue where the debtor seeks damages which are opposed by the creditor"); Kelton Motors, 121 B.R. at 186 (finding that "preservation of a right to a judgment subsumes any consent").

In this case, the Former Debtors reserved their rights under §303(i) and Stuski qualified her consent to the dismissal by her opposition to an award of attorney's fees.  Under R. Eric Peterson Construction, the positions the parties took on July 20, 2009 cannot be considered a manifestation of consent within the meaning of §303(i).  Therefore, the Former Debtors are entitled to prosecute their claim for an award of attorney's fees.

-13-

**C.  The Former Debtors' Entitlement to Attorney's Fees Under §303(i)**

**1.**

The Bankruptcy Code authorizes the award attorney's fees and costs upon dismissal of an involuntary petition other than on consent of all parties, even in the absence of bad faith on the part of the petitioning creditor.  E.g., In re Ross, 135 B.R. 230, 236 (Bankr. E.D. Pa 1991).  The award of attorney's fees under §303(i)(1) is often described as discretionary, not mandatory.  In re Reid, 854 F.2d 156, 159 (7th Cir. 1988); In re Skyworks Ventures, Inc., 431 B.R. 573, 576 (Bankr. D.N.J. 2010); Diloreto, 388 B.R. at 647.  However, a majority of courts have held that there is a presumption in favor of awarding costs and reasonable attorney's fees under §303(i)(1).  Skyworks Ventures, 431 B.R. at 576 (citing In re S. Cal. Sunbelt Developers, Inc.); Diloreto, 388 B.R. at 647-48; In re Landmark Distribs., 189 B.R. 290, 307 (Bankr. D.N.J. 1995).

Under the "presumption" approach, to avoid liability for attorney's fees, the petitioning creditors bear the burden of establishing that factors exist that overcome the presumption in favor of awarding attorney's fees under §303(i) and that, based upon the totality of the circumstances, no attorney's fees should be awarded.  Among the factors a court may consider in determining whether a petitioning creditor has overcome the presumption in favor of an award of fees under §303(i) are:

> (1) the merits of the involuntary petition;
>
> (2) the reasonableness of the actions of the petitioning creditors;
>
> (3) the motivation and objectives behind the filing of the petition;
>
> (4) any improper behavior of the debtor.

E.g., S. Cal. Sunbelt Developers, 608 F.3d at 462; Skyworks Ventures, 431 B.R. at 576; In re

DSC, Ltd., 387 B.R. 174, 178 (Bankr. E.D. Mich. 2008); K.P. Enterprise, 135 B.R. 174, 177

(Bankr. D. Me. 1992).

If the presumption in favor of an award of fees under §303(i) is not overcome, the

involuntary debtor bears the burden on the issue of the reasonableness of the amount of the

requested fees.  Diloreto, 388 B.R. at 647 (citing In re Scrap Metal Buyers of Tampa, Inc., 233

B.R. 162, 166, (Bankr. M.D. Fla. 1999), aff'd, 253 B.R. 103 (M.D. Fla. 2000)).

In this case, I find that first three of the four considerations regularly examined by the

courts support an award of attorney's fees, while the fourth consideration tends to support a

denial of fees.  After balancing the competing considerations, I find that Stuski failed to

overcome the presumption in favor of awarding attorney's fees under §303(i).


**2.**

In opposing the award of fees under §303(i), Stuski makes two arguments.

First, Stuski claims that she was justified in filing the Involuntary Petitions.  She asserts

that she filed the Involuntary Petitions based on a good faith belief that she was entitled to some

form of payment under the Alleged Settlement Agreement and that she was concerned that other

creditors and employees of the Brandow Group entities were not being paid.  Stuski contends

that she made a reasonable investigation into the Former Debtors' financial state by speaking

with two then-current employees who relayed to her information that the Former Debtors were

not paying certain vendors in a timely manner and she was informed through an e-mail from the

bank that one of the accounts was overdrawn.  See Finding of Fact No. 17.

Second, Stuski argues that fees should not be awarded because she was willing to dismiss

the Involuntary Petitions voluntarily on or around July 2, 2009.  <u>See</u> Finding of Fact Nos. 23-27,

<u>supra</u>.  She suggests that Menkowitz lulled her into believing that he would assist in the dismissal

of the petitions while Frank was preparing and later filed the Motions to Dismiss the Involuntary

Petitions that give rise to the present §303(i) attorney's fees claims.  <u>See</u> Finding of Fact No. 27-

29, 33-34 & nn.8-9, <u>supra</u>.


### 3.

The filing of an involuntary petition is "an extreme remedy with serious consequences to

the alleged debtor."  <u>In re Reid</u>, 773 F.2d 945, 946 (7th Cir. 1985); <u>Tichy</u>, 332 B.R. at 372.  As a

result, courts expect petitioning creditors to "carefully examine the risks undertaken in the filing

of an involuntary petition."  <u>Landmark Distributors</u>, 189 B.R. at 306.  "This is especially true

when the involuntary case is filed by a single petitioning creditor."  <u>In re Ballato</u>, 252 B.R. 553,

557 (Bankr. M.D. Fla. 2000).

As elaborated below, the Involuntary Petitions filed by Stuski had no merit and, in fact,

her legal theory had several obvious, gaping flaws.  Her pre-filing investigation was cursory at

best and, in any event, wholly inadequate.  In short, Stuski acted unreasonably, perhaps even

wantonly, in filing the Involuntary Petitions.

Initially, Stuski failed to demonstrate that she had any reasonable basis to believe that the

Former Debtors each had less than twelve creditors.  <u>See</u> 11 U.S.C. §303(b) (involuntary petition

may be filed by three creditors holding non-contingent claims that are not subject to a <u>bona fide</u>

dispute with aggregate claims of at least $13,475 unless there are less than twelve such creditors,

in which case involuntary petition may be filed by less than three such creditors with aggregate

claims of at least $13,475).  In July 2008, Stuski was aware that one of the debtors (Express Car)

was an operating entity making payments each month to approximately thirty creditors.  (N.T. at

70-71).  Stuski conducted no investigation that would have given her a reasonable basis to

believe that one year later, in July 2009, Express Car's finances had changed so that it now had

less than twelve creditors.  Instead, she filed the involuntary petition against Express Car based

on her erroneous belief that the "twelve creditor" rule referred only to secured creditors.  In light

of the plain language of 11 U.S.C. §303(b), this mistake was objectively unreasonable.[13]

This failure to file an involuntary bankruptcy petition with the requisite number of

petitioners is significant.  The three creditor requirement "is not a meaningless formality."  Id.

(quoting In re Alta Title Co., 55 B.R. 133, 137 (Bankr. D. Utah 1985)).  Courts are particularly

sensitive to "the potential for abuse in allowing a single creditor to force a debtor into

bankruptcy."  In re Dino's, Inc., 183 B.R. 779, 782 (S.D. Ohio 1995).  It was patently

unreasonable for Stuski to take the serious step of commencing an involuntary bankruptcy

petition against two active business entities based on her cursory and clearly erroneous reading of

the relevant provision of the Bankruptcy Code.

Even if Stuski had some basis for believing that the Former Debtors had less than twelve

creditors, she had no reasonable basis to believe that her claim was not subject to a bona fide

---

[13]      Although it may seem counterintuitive at first, I give no weight to the fact that Stuski is
an attorney.  I consider it doubtful that her status as an attorney requires that she be held to a higher
standard of conduct, as the Former Debtors suggest.  Conversely, her lack of bankruptcy expertise a basis
does not excuse her conduct, as Stuski suggests.  The right to attorney's fees under §303(i) runs against
the petitioning creditors, not their counsel.  In the perhaps more common scenario in which an
involuntary petition filed by non-lawyer petitioning creditors is dismissed other than by consent,
typically, no inquiry is made into the bankruptcy law credentials of the petitioners' counsel in
determining whether attorney's fee should be awarded under §303(i) and there is no reason to do so here.
 Like any other petitioning creditor, Stuski bears the consequences of the legal judgments made by her
counsel – in this case, herself.

dispute.  See 11 U.S.C. §303(b) (petitioner must be holder of claim that is not the subject of a

bona fide dispute).  A debt is subject to a bona fide dispute if "there is a genuine issue of a

material fact that bears upon the debtor's liability, or a meritorious contention as to the

application of law to undisputed facts . . . [or s]tated another way, a bona fide dispute exists . . .

if substantial factual or legal questions exist regarding the putative debtor's liability to the

claimant."  In re Tama Mfg. Co., Inc., 2010 WL 2521746, at *3 (Bankr. E.D. Pa. June 22, 2010)

(citing B.D.W. Assoc., Inc. v. Busy Beaver Bldg. Centers, Inc., 865 F.2d 65, 66-67 (3d

Cir.1989)) (internal quotations omitted).  I have found, as a fact, that when she filed the

Involuntary Petitions, Stuski was aware that her claims were disputed.  See Finding of Fact No.

20 & n.4, supra.  Considering that no written agreement exists memorializing the Alleged

Settlement Agreement, there is no doubt that a substantial factual question exists regarding the

Former Debtors liability.

     Nor did Stuski make a showing that she had any reasonable basis with respect to still

another element of an involuntary petition   – that the Former Debtors were "generally, not

paying [their] debts as such debts [became] due."  11 U.S.C. §303(h)(1).[14]  When an involuntary

petition is contested, the "generally not paying" standard in §303(h)(1) requires that a court

consider the number of debts the debtor has, the amount of the delinquency, the materiality of the

nonpayment, the nature and conduct of the debtor's business, as well as numerous other potential

factors.  2 Collier on Bankruptcy ¶303.31[2], at 303-95 to 303-96 (Alan N. Resnick, Henry J.

Sommer eds., 16th ed. 2010) ("Collier").  The issue is both fact intensive and analytically

---

[14]     Debts that are the subject of a bona fide dispute are excluded from consideration.  11
U.S.C. §303(h)(1).

challenging, requiring at least a modicum of thought and preparation.[15]  Merely relying on a few

snippets of information from two employees who claim the Former Debtors were not paying

certain vendors and an e-mail from the bank regarding the status of a single bank account, as

Stuski did here, falls far short of the type of evidence that would suggest that a petitioning

creditor has made a reasonable investigation sufficient to overcome the presumption that

attorney's fees should be awarded under §303(i) upon dismissal of an involuntary petition.

  The facts and circumstances described above lead me to conclude that Stuski's action in

filing the Involuntary Petitions was not the product of due diligence and sober decision making,

but rather an ill-considered, impulsive act of someone desperately attempting to remedy what she

considered to be a grave injustice.  Whatever the merits of Ms. Stuski's underlying claims against

the Brandow Group entities may be, the record compels the conclusion that the filing of the

Involuntary Petitions lacked any reasonable factual and legal foundation.  As such, Stuski's

conduct militates strongly in favor of an award of attorney's fees.

  Thus, the Involuntary Petitions lacked merit and Stuski acted unreasonably in filing them.

  The third of the four factors mentioned earlier and regularly considered in the "totality of

the circumstances" analysis is the petitioners' motivation in initiating involuntary bankruptcy

proceedings.  Here, I have found that Stuski's primary motivation for filing the Involuntary

Petitions was enforcement of her claim under the Alleged Settlement Agreement, rather than the

protection of the Former Debtors' creditors generally.  <u>See</u> Finding of Fact No. 22.  This, too,

---

[15]  In the section cited in the text, Collier lists ten additional factual inquiries that may be
considered when evaluating whether a debtor is "generally not paying" its debts as they fall due.

supports an award of counsel fees under §303(i).[16]  See, e.g., Skyworks Ventures, 431 B.R. at
577.

All of that said, there is a countervailing consideration.  Stuski was willing to withdraw
the Involuntary Petitions, virtually as soon as they were sent to the court for filing.[17]
Notwithstanding Stuski's eleventh hour attempt to "place the genie back in the bottle," my
discretion is better exercised by awarding counsel fees.  This is so for two reasons.

First, Stuski did not unequivocally, unconditionally and clearly communicate to
Menkowitz her willingness to withdraw the Involuntary Petitions.  See Finding of Fact No. 28 &
n.8, supra.  She must bear responsibility for that.  Second, whatever the uncertainties may have
been regarding the logistics for withdrawing the Involuntary Petitions, see Finding of Fact No. 29
& n.8 supra, as the party who initiated the involuntary bankruptcy process, Stuski bore the
ultimate responsibility for terminating the process.  Her passivity and reliance on opposing
counsel (i.e., Menkowitz) for assistance is not a basis for absolving her from bearing the
consequences of her initial conduct.  Once she was convinced that the Involuntary Petitions

---

[16]    However, this consideration plays only a relatively minor role in my decision.
Petitioning creditors cannot be expected to be motivated by altruism as opposed to their own self-interest.
Thus, so long as the filing of an involuntary petition has an adequate factual and legal basis, has a
potential to benefit creditors other than the petitioners, and is not an attempt to use the bankruptcy
process for an improper purpose (e.g., to harm the debtor with no concomitant bankruptcy purpose), it
should matter little, if it all, that the petitioners were primarily concerned about their own interests.  The
problem in this case was less that Stuski filed the Involuntary Petition to compel the payment of her
claim and more that her invocation of the involuntary bankruptcy process was inadequately grounded
factually and legally.

[17]    It is not entirely clear why this matter was not resolved promptly and inexpensively
between July 2, 2009 (when the Involuntary Petitions were in transit to the court and Stuski
communicated with Menkowitz) and July 9, 2009 (when the Involuntary Petitions were docketed in the
court).  Neither party chose to call Menkowitz as a witness, leaving only Stuski's testimony, which I have
largely credited.

lacked merit, she should have been more proactive in undoing the deed.

Stuski's attempt to ameliorate the consequence of the unfounded filings is relevant, but is outweighed by the degree to which her conduct was flawed and the need to hold her accountable for inappropriately initiating the proceedings in the first place. Accordingly, I conclude that she has failed to overcome the presumption in favor of awarding counsel fees after a non-consensual dismissal under §303(i).

### D. The Determination of the Amount of Attorney's Fees

### 1.

Having determined that I will exercise my discretion to award attorney's fees to the Former Debtors pursuant to §303(i)(1)(B), I must calculate what amount is reasonable and appropriate under the circumstances. The Former Debtors presented documentary evidence of the attorney's fees in the form of an itemization in the amount of $34,524.00. (Exhibit PD-22A).

The Former Debtors' attorney's fees request breaks down into two general categories: (1) fees incurred in challenging the Involuntary Petitions and (2) fees incurred in litigating their entitlement to counsel fees. All of the fees at issue were incurred by Frank and his law firm. Two attorneys in Frank's law firm worked on this case: Frank and Jill B. Levy. The Former Debtors made no request for any counsel fees that may have been incurred by Menkowitz.

For the reasons set forth below, I find that the Former Debtors should be awarded $26,495.00 in attorney's fees.

**2.**

The bankruptcy cases were filed on July 9, 2009 and dismissed on July 20, 2009.  Prior to

the July 9th filing date, Stuski gave the Former Debtors notice that the cases were being filed.

Frank's time records begin with an entry on June 30, 2009 that refers to "M.Stuski e-mail threat

to put companies into involuntary bankruptcy."  Between June 30, 2009, and July 20, 2009,

Frank expended 19.4 hours in preparing an expedited motion to dismiss the Involuntary

Petitions, to obtain an injunction restraining Stuski from filing another bankruptcy petition

against the Former Debtors, and appearing in court to prosecute the Motions to Dismiss.  His

hourly rate is $340.00.  Frank's associate, Levy, expended 6.1 hours during the same time period

researching legal issues and preparing the Motions to Dismiss.[18]  Her hourly rate is $280.00.

Therefore, the requested fees for this time period amount to $8,304.00.

I find the attorney's fee request for the services rendered in obtaining dismissal of the

cases to be reasonable.[19]

---

[18]     Ex. PD-22A includes both the time records and a compilation of the time.  The time
compilation for the hours expended by Frank and Levy in the exhibit for this time period is inaccurate.
Therefore, I have recalculated the time.  Also, there is a time entry of 2.40 hours on July 16, 2009 for an
individual identified only as "JSM."  I have disallowed that time entry.

[19]     In reaching this conclusion, I am aware that the Former Debtors did not obtain all of the
relief requested in the motions to dismiss.  Specifically, the request for an injunction against the filing of
future involuntary petitions was denied.  However, it is not necessary that a prevailing party succeed on
every aspect of its claim to be entitled to compensation for the time expended.  See Hensley v. Eckerhart,
461 U.S. 424, 435 (1983) (holding that attorney's fees under 42 U.S.C.S. §1988 should not be reduced
simply because plaintiff did not prevail on every contention raised in lawsuit).  "Thus, in successful
litigation, fees should not ordinarily be reduced for unsuccessful procedural, discovery, and other
motions." Alba Conte, Attorney Fee Awards §4:18 (3d. ed. 2004).  In this case, given the potential harm
to the Former Debtors posed by the Involuntary Petitions and the work product of their counsel, I am
satisfied that $8,304.00 represents a reasonable attorney's fee for this phase of the case.

**3.**

Finally, I consider the Former Debtors' entitlement to attorney's fees incurred in litigating

their entitlement to attorney's fees under 11 U.S.C. §303(i).  The Former Debtors' entitlement to

"fees on fees" is well established.  See, e.g., S. Cal. Sunbelt Developers, 608 F.3d at 463-64.

"This is so because it would be inconsistent to dilute a fees award by refusing to compensate

attorneys for the time they reasonably spent in establishing their rightful claim to the fee."

Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 981 (9th Cir. 2008); see also Hernandez v.

Kalinowski, 146 F.3d 196, 199 (3d Cir.1998) ("courts consistently have interpreted fee shifting

statutes . . . to provide for reasonable fees for all time spent in the vindication of statutory . . .

rights, including fees related to the preparation and litigation of motions for attorney's fees").

The time expended by Frank in litigating his firm's entitlement to attorney's fees can be

divided into three components: (1) defending against Stuski's motion to disqualify him as

counsel; (2) engaging in pretrial discovery and administrative and other related pre-trial matters;

and (3) preparing for and conducting the hearing the entitlement to fees held on June 21, 2010.

The time expended in these areas breaks down essentially as follows:

|  | Disqualification | Pre-Trial Discovery & Other | Trial and Trial Prep. |
|---|---|---|---|
| **Jill B. Levy** | 6.8 hours | 21.6 hours | 0.00 |
| **Alan L. Frank** | 12.5 hours | 31.3 hours | 6.9 hours |
| **Fees Requested** | **$6,154.00** | **$16,690.00**[20] | **$3,692.00**[21] |

---

[20]        In this category, the time was expended primarily, but not exclusively, on discovery
matters.  The time records included a few entries for time expended by another lawyer in Frank's firm:
Alexander Palamarchuk.  I have included Palamarchuk's time in the fee request referenced in the text.

(continued...)

I find reasonable all of the time expended by Frank and his associate in connection with

Stuski's motion to disqualify him as counsel[22] as well as his time in preparing for the hearing

held on June 21, 2010 on the merits of the attorney's fees request.  However, the same cannot be

said with respect to the time expended on pretrial discovery and other matters.

Upon dismissal of the case, the Former Debtors enjoyed a legal presumption in favor of

the allowance of their attorney's fees that they incurred in the case.  In light of their legal

position, one would expect the Former Debtors' discovery needs and pre-trial preparation to be

modest.  Yet, they filed pretrial motions relating to discovery and a motion in limine.  All of

those motions were denied.  (Bky. No. 09-15041, Doc. #'s 40, 55, 56; Bky. No. 09-15042, Doc.

#'s 42, 60, 61)

Having refereed the contentious pretrial wrangling between the parties, I find that a

portion of Frank's pre-trial legal work was not reasonable because, at least to some degree, the

case was "overworked."  In reaching this conclusion, I have taken into account the fact that

Stuski, too, was an aggressive adversary and that there were personality conflicts that contributed

to some needless pretrial litigation between the parties.  I conclude that while Frank and his firm

---

[20](...continued)
However, I have excluded the February 24, 2010 time entry of "RDB" (0.50 hours, $120.00).

[21]      In Ex. PD-22B, the attorney's fee request included an estimate of 3.0 hours for trial time
on June 21, 2010, which comes to $2,346.00.  I have enhanced that by four hours ($1,346.00) based upon
the actual amount of trial time.  This increases the compensation request for trial and trial preparation to
$3,692.00 and the total compensation requested to $35,870.00.

[22]      The disqualification issue required that Frank respond to the factual allegations in the
motion and prepare a memorandum of law.  In addition, Frank handled the evidentiary hearing on the
motion.  The motion was denied by order dated August 24, 2009.  (Bky. No. 09-15051, Doc # 30; Bky.
No. 09-15042, Doc # 28).

are not entirely responsible for the mushrooming of the attorney's fees dispute, they must bear a substantial portion of the responsibility. Consequently, I find it appropriate to reduce in half the $16,690.00 in fees requested for pretrial discovery and related matters. The portion of the attorney's fees request attributable to Frank's time engaging in pre-trial discovery and related pretrial matters matter will be reduced by $8,345.00.

Taking into account the reduction described above, the attorney's fees lodestar in this case is $26,495.00.[23]

## V.

For the reasons explained above, I find that Stuski has failed to rebut the presumption in favor of awarding attorney's fees under 11 U.S.C. §303(i) and that  the Former Debtors incurred reasonable attorney's fees in these cases totaling $26,495.00. Therefore, I will enter judgment in favor of the Former Debtors and against Stuski in the amount of $26,495.00.

Date:   November 12, 2010 

_____
**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

---

[23]

| | |
|---|---|
| Fees incurred in obtaining dismissal | $8,304.00 |
| Fees relating to the disqualification motion | +  6,154.00 |
| Fees for discovery and other pretrial matters | +  8,345.00 |
| Fees for pretrial preparation and trial | +  3,692.00 |
| **Total** | **$26,495.00** |